CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 30 2020

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| BRADFORD M. KENDRICK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:19CV00047 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CARTER BANK & TRUST, INC., | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Bradford M. Kendrick filed this action against his long-time employer, Carter Bank & Trust, Inc. (the "Bank"), asserting claims of discrimination and harassment in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 634. The case is presently before the court on the Bank's motion to dismiss. For the reasons set forth below, the motion will be granted in part and denied in part.

## Background

The following facts are taken from the amended complaint and documents referenced therein. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (noting that the court could properly consider a document submitted by the defendant in determining whether to dismiss the complaint "because it was integral to and explicitly relied on in the complaint"); Bowie v. Univ. of Md. Med. Sys., No. 1:14-cv-03216, 2015 U.S. Dist. LEXIS 42433, at *8 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, i.e., effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint.") (citations omitted).

Kendrick is 64 years old and has worked for the Bank since May 1, 1985. He was initially hired by Worth Harris Carter, Jr., the founder of the Bank. Kendrick was promoted several times over the years and eventually obtained the position of "Executive Vice-President IT (Information Technology)." Am. Compl. ¶ 9, ECF No. 23.

Following Carter's death in April of 2017, Litz van Dyke became the Bank's Chief Executive Officer. Around the same time, the Bank created the new position of Chief Information Officer ("CIO"). Kendrick alleges that he was "well-qualified to serve as CIO and had in fact been performing the duties of CIO for approximately 25 years." Id. ¶ 12. When Kendrick met with van Dyke after applying for the position, van Dyke acknowledged that Kendrick had been performing the duties of CIO for a long time. Nonetheless, van Dyke advised Kendrick that he was "not going to be the CIO of this bank." Id. ¶ 15 (internal quotation marks omitted).

On July 1, 2017, Matt Speare was hired as the CIO. At the time of his hiring, Speare was 50 years old. Following his arrival, the Bank reassigned most of Kendrick's duties to Speare. Likewise, the departments that Kendrick had been overseeing were ordered to report to Speare, and van Dyke instructed Kendrick to stop attending Board of Directors' meetings, Executive Management meetings, and Senior Management meetings.

The Bank also stopped providing Kendrick with annual performance evaluations after Speare became the CIO. Unlike prior years, Kendrick did not receive an annual performance evaluation in 2017, 2018, or 2019, and he had not yet received a 2020 evaluation at the time this action was filed. Kendrick alleges, on information and belief, that "younger employees received annual performance evaluations during that time," and that he was the only employee whose performance was not evaluated by the Bank. Id. ¶ 24. He further alleges that "performance

evaluations affect all aspects of employment, including compensation and promotions," and that the absence of evaluations hindered his advancement. Id. ¶ 25. For instance, in 2017, Kendrick did not receive a merit raise for the first time since he was hired by the Bank. Although Kendrick received a "standard percentage raise" in 2018 and 2019, his salary was nearly three times less than Speare's salary. Id. ¶¶ 30–32.

"In addition to stripping plaintiff of his duties, failing to provide annual performance evaluations to plaintiff, and limiting plaintiff's compensation, the Bank also removed plaintiff as an officer of the Bank." Id. ¶ 44. In documents issued by the Bank in 2018, Kendrick continued to hold the title of "Executive Vice-President-IT." Id. ¶¶ 44–45. However, in a March 2020 organizational chart, the Bank listed Kendrick as "CISO (Chief Information Security Officer)" and Speare as "EVP, Chief Information Officer." Id. ¶ 46 (internal quotation marks omitted).

Kendrick further alleges that the Bank has adversely affected his ability to do his job by excluding him from meetings and training. For instance, despite having the nominal title of CISO, the Bank excluded Kendrick from a network inspection performed by a third party in 2019, as well as a March 2020 meeting to develop the Bank's COVID-19 response plan. The Bank also excluded Kendrick from "WorkFusion training" in early 2020, "thus setting plaintiff up to fail the online courses," and instructed Kendrick "not to attend any of the IT Fiserv conferences and other functions going forward." Id. ¶¶ 50, 55.

Kendrick claims that the Bank has subjected him to disparate treatment because of his age. Kendrick bases this assertion, at least in part, on age-related comments made by Speare and other Bank officials. For example, shortly after Speare was hired, Kendrick attended a staff meeting during which Speare highlighted the average age of the Bank's IT employees, and "stated that 'all of us sitting around the table are getting older' and that 'the Bank needs to hire younger

employees.'" Id. ¶ 58. Similarly, Phyllis Karavatakis, the former President of the Bank, told Kendrick "several times" that they needed to find their replacements because they were not as young as they used to be. Id. ¶ 60. "Karavatakis also told plaintiff that the Bank needed to be finding replacements for Diann Nelson (VP-IT Operations) and Lee Eldridge (VP-Network Manager), both of whom are older than plaintiff." Id. ¶ 61. More recently, Karen Pratt, a loan officer with the Bank and a close friend of Karavatakis, asked Kendrick when he was going to retire. When Kendrick responded that he had no intention of retiring anytime soon, Pratt expressed surprise.

In addition to the foregoing comments, Kendrick cites to the Bank's hiring patterns since Carter passed away. Kendrick alleges that "the Bank has hired much younger employees for most all open positions," and that older employees' duties "have been given to new younger employees." Id. ¶ 67. Additionally, each of the Executive Vice-Presidents hired in the years following Carter's death has been at least a decade younger than Kendrick.

Kendrick also points to other Bank employees who were allegedly terminated or treated less favorably because of his or her age. Donna Burnopp, who is 69 years old, was reassigned to a different position and subsequently terminated, after being told that she was no longer qualified for her job. Stan Foley, the Bank's Facilities Manager, was turned down for the new position of Facilities Director at the age of 56, and the position was given to someone more than 20 years younger. Similarly, Vicki Craig was removed from the position of Internal Auditor at the age of 61 and replaced by an individual in his early 20's.

On August 14, 2019, Kendrick executed a charge of discrimination alleging that he was "being harassed and discriminated against on account of [his] age (63)." Def's Mot. Dismiss Ex. A, ECF No. 5-1. By letter dated August 15, 2019, Kendrick's attorney provided a copy of the

4

charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"). Id. The charge was received by the EEOC on August 19, 2019. Id. On September 11, 2019, the EEOC issued a Dismissal and Notice of Rights, which indicated that the EEOC was closing its file on the charge of discrimination because it "was not timely filed with [the] EEOC." Def.'s Mot. Dismiss Ex. B, ECF No. 5-2.

## Procedural History

Kendrick filed the instant action on December 2, 2019. The Bank moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On May 4, 2020, the court held a hearing on the Bank's motion. At the conclusion of the hearing, the court took the motion under advisement and granted Kendrick leave to file an amended complaint.

On May 8, 2020, Kendrick filed an amended complaint against the Bank, in which he asserts claims of discrimination and harassment in violation of the ADEA. In response, the Bank renewed its motion to dismiss. The matter is now ripe for review.

## Standard of Review

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). One such defense is the statute of limitations. See Jones v. Bock, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal . . . ."); see also Agolli v. Office Depot, Inc., 548 F. App'x 871, 875 (4th Cir. 2013) (affirming the Rule 12(b)(6) dismissal of the plaintiff's hostile work environment claim as time-barred).

## Discussion

Kendrick's amended complaint asserts claims of disparate treatment and harassment under the ADEA, which "prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age 'because of' the person's age." EEOC v. Balt. Cty., 747 F.3d 267, 272 (4th Cir. 2014) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). The Bank has moved to dismiss the amended complaint in its entirety on the grounds that (1) any discrete claims of disparate treatment that occurred prior to October 23, 2018 are time-barred; (2) "any alleged claims of disparate treatment occurring after October 23, 2018 fail to meet the burden for a prima facie claim of disparate treatment"; and (3) the complaint fails to state a cognizable hostile work environment claim. Def's Renewed Mot. Dismiss 1, ECF No. 29. The court will address each argument in turn.

I.     **Untimely Claims of Disparate Treatment**

"Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification" such as age. Perkins v. Int'l Paper Co., 936 F.3d 196 (4th Cir. 2019) (internal quotation marks and citation omitted). Claims of disparate treatment "should be dismissed if not timely filed." Id. Under the ADEA, Kendrick was required to file a charge of discrimination with the EEOC within 300 days "after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1). Consequently, Kendrick "may proceed and recover only on deliberate discrimination that occurred within the 300 days of filing his charge." Perkins, 936 F.3d at 207.

In arguing that certain claims are time-barred, the Bank appears to assume that a charge of discrimination is filed with the EEOC on the date that it is received by the agency.[1] However, a regulation promulgated by the EEOC provides three alternative filing dates for charges of age discrimination submitted by mail. See 29 C.F.R. § 1626.7(b). The date of receipt by the EEOC is deemed the filing date only if the "postmark and letter date are illegible and/or cannot be accurately affixed." Id. For purposes of the pending motion, the court will assume that Kendrick's charge of discrimination and accompanying cover letter were postmarked August 15, 2019, the same date that the letter was drafted. Consequently, any disparate treatment claims involving conduct that occurred prior to October 19, 2018 are untimely. See id.

Based on the allegations in the amended complaint, it is clear that Kendrick's claim of disparate treatment for being denied the position of CIO arose in July of 2017, when the position was given to Matt Speare. Accordingly, such claim is time-barred. See id.; see also Williams v.

---

[1] As indicated above, the Bank argues that any discrete claims of disparate treatment that occurred prior to October 23, 2018 are time-barred. The October date cited by the Bank is 300 days prior to the date on which Kendrick's charge of discrimination was stamped as received by the EEOC. See Def.'s Mot. Dismiss Ex. A.

Giant Food, Inc., 370 F.3d 423, 429 (4th Cir. 2004) ("Because failure to promote is a discrete act of discrimination, the continuing violation doctrine does not apply here and cannot save Williams's untimely claims."). The same is true for any discrete claims of disparate treatment for being stripped of duties and denied a raise in 2017. For these reasons, the Bank's motion to dismiss will be granted with respect to these claims and any other discrete claims of disparate treatment occurring prior to October 19, 2018.

## II. Timely Claims of Disparate Treatment

The Bank next argues that any timely allegations of disparate treatment "fail to meet the burden for a prima facie claim." Def.'s Renewed Mot. Dismiss 1. For the following reasons, the court concludes that this argument is without merit.

An employee may establish a claim of disparate treatment under the ADEA by using either direct or circumstantial evidence. Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019). "When analyzing ADEA claims grounded in circumstantial evidence, [courts] use the three-stage, burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Id. Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Specifically, the plaintiff must show: (1) that he is a member of the protected class; (2) that he suffered an adverse employment action; (3) that he was performing satisfactorily at the time of the adverse employment action; and (4) that the adverse employment action occurred under circumstances which give rise to an inference of age discrimination. Collins v. Balt. City Bd. of Sch. Comm'rs, 528 F. App'x 269, 271 (4th Cir. 2013); see also Westmoreland, 924 F.3d at 725 (holding that the fourth element may be met with evidence that a substantially younger individual with comparable qualifications was treated more favorably).

"The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002). Thus, "[t]to survive a Rule 12(b)(6) motion to dismiss for failure to state an ADEA claim, [the plaintiff] is not required to plead a prima facie case of discrimination." Tickles v. Johnson, 805 F. App'x 204, 207 (4th Cir. 2020) (citing Swierkiewicz, 435 U.S. at 515). Nonetheless, the plaintiff is "'required to allege facts to satisfy the elements of a cause of action created by [the ADEA]' in compliance with Iqbal." Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir. 2017) (quoting McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2005)). Thus, the proper question at this stage of the proceedings is whether Kendrick has stated a claim of disparate treatment under the ADEA that is plausible, and not merely speculative. McCleary-Evans, 780 F.3d at 585–86.

Applying this standard, the court concludes that Kendrick's allegations of disparate treatment occurring on or after October 19, 2018 satisfy this requirement. Kendrick alleges that he was denied annual performance evaluations in 2019 and 2020, which adversely affected his eligibility for increased compensation and promotions. Kendrick further alleges that the Bank removed him as an executive officer during the same time frame. Such actions constitute the types of adverse employment actions that can give rise to claims of disparate treatment. See Dortch v. Cellco P'ship, 770 F. App'x 643, 647 (4th Cir. 2019) ("Examples of an adverse employment action include a 'decrease in compensation, job title, level of responsibility, or opportunity for promotion.'") (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004); see also cf. Perkins, 936 F.3d at 207 (holding that the plaintiff's "claim about annual reviews fail[ed] the third requirement of a disparate treatment claim" since the plaintiff

offered no evidence indicating that the absence of annual reviews adversely affected the terms, benefits, or conditions of his employment).

Moreover, Kendrick has plausibly asserted that the adverse employment actions were taken because of his age. Kendrick alleges that "younger employees received annual performance evaluations," that the Bank has "marginalized" older employees and reassigned their duties to "new younger employees," and that high-ranking officials have made comments suggesting that older employees like Kendrick need to be replaced with younger employees. Am. Compl. ¶¶ 24, 67, 58, 60. Such allegations provide a plausible basis to conclude that the adverse actions were taken because of Kendrick's age. See McMichael v. Transocean Offshore Deepwater Drilling, Inc., 934 F.3d 447, 458 (5th Cir. 2019) (explaining that "courts will find evidence of age discrimination where the statement references age in a derogatory or stereotypical way" or "where the employer's statement shows a desire to replace older employees with younger ones").

For these reasons, the court concludes that Kendrick has stated plausible claims of disparate treatment arising from the adverse actions taken against him on or after October 19, 2018. Accordingly, the Bank's motion will be denied with respect to such claims.

### III.   Claim of hostile work environment

Finally, the Bank argues that Kendrick has failed to plead sufficient facts to state a hostile work environment claim.[2] To prevail on such claim under the ADEA, a plaintiff must establish:

---

[2] The Bank notes that Kendrick's charge of discrimination did not contain the phrase "hostile work environment." While this may be true, Kendrick repeatedly alleged that he was "being harassed and discriminated against on account of [his] age." Def.'s Mot. Dismiss Ex. A (emphasis added); see also id. ("As further detailed in the pages that follow, I believe that I am being harassed and discriminated against because of my age in violation of state and federal law.") (emphasis added). The court concludes that such allegations were sufficient to satisfy the administrative exhaustion requirement set forth in 29 U.S.C. § 626(d). See Anderson v. Clovis Mun. Schs., 265 F. App'x 699, 706 (10th Cir. 2008) (holding that the plaintiff's charge was sufficient to exhaust his administrative remedies even though the plaintiff "did not specifically note 'hostile work environment' . . . on the form"); Smith v. Potomac Elec. Power Co., No. 8:19-cv-01764, 2020 U.S. Dist. LEXIS 69344, at *18 (D. Md. Apr. 17, 2020) (same).

(1) that he experienced unwelcome harassment; (2) that the harassment was based on his age; (3) that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) that there is some basis for imposing liability on the employer. Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). In moving to dismiss this claim, the Bank focuses on the third element, arguing that the facts alleged in the complaint do not describe the type of severe or pervasive harassment required to create a hostile work environment. For the following reasons, the court is unpersuaded.

"[I]n the Fourth Circuit, the question of whether harassment was sufficiently severe or pervasive is quintessentially a question of fact." Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 733 (4th Cir. 1997) (internal citation and quotation marks omitted). The question "is not answered by a 'mathematically precise test,' but rests on a variety of factors, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 209 (4th Cir. 2014) (quoting (Harris v. Forklift Sys., Inc., 510 U.S. 17, 22–23 (1993)). Moreover, harassment "need not be severe and pervasive to impose liability; one or the other will do." Hostetler v. Quality Dining, Inc., 218 F.3d 798, 808 (7th Cir. 2000); see also Harris v. Mayor of Baltimore, 429 F. App'x 195, 201 n.7 (4th Cir. 2011) ("Our precedent makes clear, however, that the element is properly reviewed in the disjunctive, requiring only that a plaintiff prove the harassment was severe or pervasive.") (emphasis in original).

In this case, Kendrick alleges that the Bank has engaged in a pattern and practice of discrimination against older employees since its founder passed away, and that high-ranking

11

officials have made statements exhibiting an age-based animus on multiple occasions.[3] The court recognizes that some of the comments described in the amended complaint, such as Pratt's inquiry concerning Kendrick's plans for retirement, were not so severe that they would create a hostile work environment if made only once or infrequently. However, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." Lauderdale v. Tex. Dep't of Crim. Justice, 512 F.3d 157, 163 (5th Cir. 2007) (internal quotation marks and citation omitted). Moreover, the challenged comments and questions must be considered in the context in which they were made. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). Here, Kendrick alleges that Bank officials have made numerous comments suggesting that he and other older employees should retire. When combined with other incidents in which Kendrick and older co-workers have been marginalized, stripped of duties and responsibilities, and denied training and promotional opportunities provided to younger employees, such comments and conduct are sufficient to plead a hostile work environment claim under the ADEA. See Smith v. Potomac Elec. Power Co., No. 8:19-cv-01764, 2020 U.S. Dist. LEXIS 69344, at *22 (D. Md. Apr. 17, 2020) (holding that statements pushing the plaintiffs to retire, when combined with other allegations of age-based mistreatment, were sufficient to plead a hostile work environment claim).

---

[3] Unlike claims of disparate treatment, the continuing violation doctrine applies to hostile work environment claims. See Perkins, 936 F.3d at 209 n.5 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002)). Under this doctrine, "a hostile work environment claim may appropriately extend . . . to acts that occurred before the limitations period [if] the hostile work environment continued within the limitations period as well." Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 140 (4th Cir. 2007) (internal quotation marks and citation omitted). Thus, "'[i]n determining whether an actionable hostile work environment claim exists, [courts] look to all the circumstances,' and '[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 222 (4th Cir. 2016) (quoting Morgan, 536 U.S. at 116–117) (emphasis in original). In this case, Kendrick alleges that he has endured a continuous string of age-related comments and actions, a number of which occurred within the 300-day limitations period. Consequently, the court finds it appropriate to consider the "entire scope" of conduct alleged in support of the claim of harassment or hostile work environment, "including behavior occurring prior to the limitations period." Gilliam, 474 F.3d at 142.

For these reasons, the court concludes that Kendrick's allegations of harassment, when viewed in his favor, are sufficient to withstand review under Rule 12(b)(6). It remains to be seen whether Kendrick can adduce evidence of conduct sufficiently severe or pervasive to create a hostile work environment. At this stage of the proceedings, however, his allegations are sufficient to survive a motion to dismiss. Accordingly, the Bank's motion will be denied with respect to this claim.

## Conclusion

For the reasons stated, the Bank's motion to dismiss will be granted in part and denied in part. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This __30th__ day of June, 2020.

*/s/ Glen Conrad*
Senior United States District Judge