CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAY 18 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| BRADFORD M. KENDRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 4:19-cv-00047 |
| ) | |
| CARTER BANK & TRUST, INC. ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are plaintiff Bradford Kendrick's objections (Dkt. Nos. 153, 154, 195) to then-U.S. Magistrate Judge Robert S. Ballou's orders dated September 19, 2022 (Dkt. No. 148), September 26, 2022 (Dkt. No. 152), and January 4, 2023 (Dkt. No. 193), respectively, as well as Kendrick's Rule declaration seeking the re-opening of discovery pursuant to Federal Rule of Civil Procedure 56(d) (Dkt. No. 198). The court held a hearing on these matters on February 23, 2023. (Dkt. No. 199.) For the following reasons, Kendrick's objections as to all three orders will be overruled, and the court declines to re-open discovery or issue any other order in response to the Rule 56(d) declaration.

I.   BACKGROUND

**A. Factual Allegations**

Kendrick, formerly an Executive Vice President – IT (Information Technology) at Carter Bank, asserts claims of disparate treatment and harassment, as well as retaliation, under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634, in relation to his employment with the Bank. In June 2020, the court partially dismissed Kendrick's disparate treatment claims as time barred to the extent that they relied upon alleged conduct and events

occurring prior to October 19, 2018. (Dkt. No. 44.) However, with respect to the disparate treatment claims that remain, Kendrick asserts that, after the death of Carter Bank's founder and Chairman, Worth Harris Carter, Jr., the Bank stopped providing him with annual performance evaluations in 2019 and 2020, removed him as an executive officer, and otherwise hindered his ability to do his job—all as part of a conscious effort by the Bank to hire and promote younger workers to the detriment of older workers such as Kendrick (who was 63 years of age at the time he filed this action). With respect to retaliation, Kendrick asserts that he was terminated because he filed a complaint of age discrimination and harassment with the EEOC.

**B. Magistrate Judge's Discovery Orders**

  **1. Order granting Carter Bank's motion for a protective order precluding the deposition of James Haskins (Dkt. No. 148)**

On June 28, 2022, Carter Bank moved for a protective order (Dkt. No. 126) to preclude the plaintiffs in the consolidated cases[1] from taking the deposition of James W. Haskins. Haskins serves as the Bank's Chairman of the Board of Directors and Chairman of its Governance and Compensation Committee and briefly served as its lead counsel in this case by filing a responsive pleading (before Carter Bank's current counsel eventually substituted for him). Carter Bank argued that Haskins continues to provide legal advice to the Bank in relation to this case (but the precise extent of his legal services for the Bank was not clear); the plaintiffs sought to depose Haskins solely in his role as Chairman. On September 19, 2022, Judge Ballou granted the motion for a protective order precluding the deposition, without prejudice to the

---

[1] On August 13, 2021, this action was consolidated for the purpose of discovery with two other suits by former Carter Bank employees alleging age discrimination and retaliation. (*See* Consolidated Discovery & Protective Order, Dkt. No. 105.) Both of those suits were recently dismissed upon agreement of the parties. *See Burnopp v. Carter Bank & Trust*, No. 4:20-cv-00052, Dkt. No. 99 (W.D. Va.) (entry of dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii)); *Newell v. Carter Bank & Trust*, No. 4:21-cv-00007, Dkt. No. 75 (W.D. Va.) (order dismissing the case with prejudice given the parties' settlement).

plaintiffs later making a showing that, despite other discovery efforts, no other reasonable alternatives exist to obtain the unique knowledge that Haskins may have in the management of the Bank during the relevant periods as its Chairman of the Board of Directors and Chairman of the Governance and Compensation Committee.  (Dkt. No. 148.)

### 2.  Order enlarging number of depositions (Dkt. No. 152)

Kendrick represents that the Bank identified 16 potential witnesses through its initial discovery responses in April 2020.[2]  Based on that representation, the plaintiffs in the consolidated cases deposed 10 people.  Then, in July 2022, the Bank identified two additional witnesses: Dave Peterson and Tammy Ingram.[3]  Further, at Kendrick's deposition in July 2022, the Bank offered as exhibits the affidavits (sworn in September 2020) of six current or former Bank employees: Matt Speare, Alan Hill, Lee Eldridge, Sonya Smith, Tonya Carter, and Veronica Bocock.  Kendrick then noticed his intent to depose each of these individuals.

Kendrick moved for enlargement of the number of depositions, asking to take a total of 15 depositions; Carter Bank objected to Kendrick taking any more than 10 depositions (which is the limit set out in Federal Rule of Civil Procedure 30, absent leave of court).  After an informal telephone conference, on September 26, 2022, Judge Ballou—exercising the discretion afforded by Rules 26 and 30 to permit additional depositions—granted Kendrick's motion in part in that the court permitted him to conduct up to 11 depositions, instead of 10.  (Dkt. No. 152.)

---

[2] In his objections, Kendrick cited to exhibits which purported to support this representation; however, no exhibits were ultimately attached to the filing.

[3] Peterson was ultimately deposed in October 2022, following Judge Ballou's order granting Kendrick one additional deposition.  (Dkt. Nos. 151, 180-16.)

3

### 3. Order prohibiting the Bank from clawing back the May 27 termination letter and prohibiting Kendrick from deposing the author of the letter

Carter Bank terminated Kendrick on May 29, 2020, and sent him a letter that same day outlining the reasons for his termination (the "final termination letter"). However, at Kendrick's deposition, Carter Bank introduced as an exhibit a termination letter dated May 27, 2020 ("the May 27 draft letter"), which also purported to outline the basis for Kendrick's termination, but with several important differences from the final termination letter. The Bank requested to claw back the May 27 draft letter under the Consolidated Discovery and Protective Order entered August 12, 2021 (Dkt. No. 105), and Federal Rule of Evidence 502, stating that it inadvertently produced the letter with the "mistaken impression that it was the final version of the termination letter." In response, on November 29, 2022, Kendrick moved for entry of an order ruling that the Bank may not claw back the May 27 draft letter and ordering the Bank to permit him to depose the author of that draft. (Dkt. No. 182.) On January 4, 2023, Judge Ballou granted in part and denied in part the motion, holding that although Kendrick could not depose Haskins (or whomever drafted the letter), the Bank could not claw back the May 27 draft letter. (Dkt. No. 193.)

## C. Rule 56(d) Declaration

On November 9, 2022, Carter Bank moved for summary judgment. (Dkt. No. 165.) On February 22, 2023 (one day before the hearing on his objections to Judge Ballou's discovery orders), Kendrick filed a Rule 56(d) declaration, asserting that he needs certain discovery to present facts that are apparently essential to opposing summary judgment. Some of the issues raised in the Rule 56(d) declaration overlap with Judge Ballou's discovery rulings. In total, Kendrick asks the court to delay ruling on the pending motion for summary judgment and reopen discovery so that he may: (1) re-depose the authors of a recently-produced third version of

4

Kendrick's termination letter (the "May 29 draft letter"), (2) seek production of any native versions of the termination letter; (3) depose James Haskins; and (4) depose four additional witnesses identified by Carter Bank. (Dkt. No. 165 at 1–3.)

## II. ANALYSIS

### A. Standard of Review

To seek review of a magistrate judge's order on a referred non-dispositive matter, a party must object to the order within fourteen days. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1). The district court must consider any timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law. Fed. R. Civ. P. 72(a). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The clearly erroneous standard does not permit the reviewing court to ask whether the magistrate judge's ruling "is the best or only conclusion permissible based on the evidence" or to "substitute its own conclusions for that of the magistrate judge." *Huggins v. Prince George's Cnty., Md.*, 750 F. Supp. 2d 549, 559 (D. Md. 2010). Instead, a finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Butts v. United States*, 930 F.3d 234, 238 (4th Cir. 2019) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)). "An order is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Montgomery v. Crothall Healthcare, Inc.*, No. RDB-20-1154, 2022 WL 798692, at *2 (D. Md. Mar. 16, 2022) (internal quotations omitted).

A magistrate judge's resolution of a discovery dispute is typically afforded substantial deference. *See Stone v. Trump*, 356 F. Supp. 3d 505, 511 (D. Md. 2019) (citing cases). "The

objecting party carries a heavy burden in persuading a district court to disturb a magistrate judge's ruling in a discovery matter." *Id.*; *see also* 12 Wright & Miller, Fed. Prac. & Proc. Civ. § 3069 (3d ed. 2019) (explaining that review of a magistrate's discovery ruling "might better be characterized as suitable for an abuse-of-discretion analysis").

In addition, Rule 56(d) permits the court to, *inter alia*, defer or deny a motion for summary judgment if the nonmovant shows "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "A court should hesitate before denying a Rule 56(d) motion when the [summary judgment] nonmovant seeks necessary information possessed only by the [summary judgment] movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014). Courts ask whether "the nonmovant has sufficiently identified the information sought by discovery, the reasons the information has not yet been obtained, and the materiality of the information to its opposition to the summary judgment motion." *Phillips v. Gen. Motors Corp.*, 911 F.2d 724, 1990 WL 117981, at *5 (4th Cir. 1990) (table decision).

**B. Kendrick's Objections to Order Precluding Deposition of James Haskins (Dkt. No. 153)**

First, Kendrick assigns error to Judge Ballou's decision to grant the Bank's motion for a protective order precluding the deposition of James Haskins. He argues that a protective order was not warranted because Haskins was an active participant in the events giving rise to the cause of action and no reasonable alternatives exist to obtain the information embraced by Haskins' allegedly unique knowledge.

Generally, a litigant in a civil case is entitled to "obtain discovery" (including depositions) "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "At the same time,

'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). For example, courts must limit discovery that is unreasonably cumulative, duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Rule 26(c) provides that a court may issue a protective order, for good cause shown, to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Ordinarily, the movant bears the burden of establishing good cause by showing that specific prejudice or harm will result if no protective order is granted. *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-00066, 2020 WL 2311668, at *2 (W.D. Va. May 8, 2020) (internal quotations omitted).

As Judge Ballou observed, the issue of whether to preclude Haskins' deposition presented "an interesting intersection of separate doctrines" which each limit a party's ability to conduct depositions (Dkt. No. 148 at 3)—namely, the "apex doctrine" (which governs the deposition of a high-ranking, or "apex" corporate executive of the opposing party) or the *Shelton*[4] test (which governs the deposition of opposing counsel).[5] "Put simply, the apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)." *Performance Sales & Mktg., LLC v. Lowe's Cos., Inc.*, No. 5:07-cv-140, 2012 WL 4061680, at *4 (W.D.N.C. Sept. 14, 2012). The

---

[4] *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987).

[5] Although the Fourth Circuit has not explicitly adopted either of these doctrines, district courts within the Circuit—including in this district—have followed them. *See, e.g., RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-00066, 2020 WL 2311668 (W.D. Va. May 8, 2020) (apex doctrine); *Allen v. Brown Advisory, LLC*, No. 3:20-mc-8, 2020 WL 5603760 (W.D. Va. Sept. 17, 2020) (*Shelton* test).

party seeking to depose the apex executive may rebut the presumption by showing that "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *RLI*, 2020 WL 2311668, at *2. Should the deposing party fail to overcome this presumption, the court must then limit or even prohibit the deposition." *Performance Sales*, 2012 WL 4061680, at *4.

Relatedly, *Shelton* provides a three-prong test that a party must satisfy to depose the opposing party's attorney: "'(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case.'" *Allen v. Brown Advisory, LLC*, No. 3:20-mc-8, 2020 WL 5603760, at *2 (W.D. Va. Sept. 17, 2020) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987) (internal citations omitted)).

Neither party appears to dispute that Haskins is an apex executive or that he served as lead litigation counsel for Carter Bank in this case.[6] Rather, in objecting to Judge Ballou's order, Kendrick maintains that he overcame the relevant presumptions under both the apex doctrine and the *Shelton* test because "Haskins was an active participant in the events at issue" and "no other reasonable alternatives exist[ed] to obtain the unique knowledge held by Haskins." (Dkt. No. 153 at 2, 6.) To start, the first point of objection is inapposite because Judge Ballou did not dispute it in his analysis; indeed, Judge Ballou agreed with Kendrick that Haskins' "knowledge of what happened in the board room, during committee meetings and other meetings with consultants, is potentially relevant to the issues in th[is] case[]" and further assumed that "[a]ny deposition of Haskins," if conducted, "would be carefully limited to his role in the management of the bank" and not as counsel. (Dkt. No. 148 at 7.)

---

[6] The Bank also contended that Haskins continues to act as an attorney in a consulting role in the case. (*See* Dkt. No. 148 at 5.)

As to the second point of objection, it is important to note that Haskins was the first witness whom Kendrick noticed for deposition in this case (*see* Dkt. No. 114 (notice filed on June 23, 2022)); moreover, when the Bank filed its motion for a protective order and Kendrick filed his brief in opposition (on June 28 and July 12, 2022, respectively), Kendrick had not yet taken any depositions. Further, at the August 16, 2022 hearing on the motion before Judge Ballou (Dkt. No. 145), when asked whether he had exhausted other avenues to obtain any information Haskins might have, Kendrick again conceded that he had not yet deposed any of the Bank's board members. In sum, upon affording the necessary deference to the underlying findings, the court cannot identify clear error in Judge Ballou's conclusion that Kendrick had not explored reasonable alternatives to taking Haskins' deposition. Kendrick's objections to this order will be overruled.

C. **Kendrick's Objections to Order on His Motion for Enlargement of Number of Depositions (Dkt. No. 154).**

Next, Kendrick objects to Judge Ballou's order enlarging the number of depositions he could take from 10 to 11, as opposed to the requested total of 15.

Federal Rule of Civil Procedure 30(a)(2) requires a party to obtain leave of court to take more than ten depositions. However, the court has "broad discretion" to "supervise discovery . . . as part of [its] case-management authority." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). On motion or on its own, a court

> must limit the frequency or extent of discovery otherwise allowable by [the Federal Rules] or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

9

>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). As noted earlier, Rule 26(b)(1) permits discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

As his Rule 56(d) declaration clarifies, Kendrick's principal purpose in seeking the four additional depositions was to depose four employees of Carter Bank (Hill, Smith, Carter, and Bocock) who he alleges were with him in attendance at a September 2017 meeting, during which Speare (the Bank's CIO) allegedly stated that "all of us sitting around this table are not getting any younger and we need to be hiring younger people because it takes longer for older people to learn the new technologies" and then displayed two PowerPoint slides with the average ages of employees of the Bank. (Dkt. No. 177 at 8.) In September 2020, each of those four employees—along with Eldridge (a former Bank executive in the IT department) and Speare, both of whom were also allegedly at the meeting—signed sworn affidavits stating that they were not present at this meeting and had no knowledge either of such a meeting taking place or of the above statements. (*See* Dkt. No. 180-2 at 226–37 (affidavits presented at Kendrick's deposition).)[7]

---

[7] The seventh alleged attendee—Diann Nelson (the Bank's former VP of IT Operations)—did not submit an affidavit, but she testified at her deposition (1) that she could not remember whether it was Speare or David Hart (who is both an employee of a third-party company that performs IT audits for Carter Bank and, notably, one of Kendrick's experts) that made statements relating to the age of Bank employees (*see* Dkt. No. 180-22 at 47:23– 48:20); and (2) that she did not remember Carter or Smith being at such a meeting (*see id.* 49:4–23).

10

In his objections, Kendrick first claims that Judge Ballou erred in granting him only one more deposition because doing so "effectively deprives [him] of the ability to prepare adequately for summary judgment and trial." (Dkt. No. 154 at 4.)  The court disagrees.  Not only was Kendrick himself allegedly in attendance at the September 2017 meeting, he also has had "ample opportunity" to depose witnesses with pertinent information regarding that alleged meeting.  *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).  Specifically, Kendrick already used three of his 11 depositions to question three of the seven Bank employees whom he claims were at this meeting—Speare (who is alleged to have made statements regarding the need to bring in younger employees), Eldridge, and Nelson.  Further, Speare and Eldridge signed affidavits swearing that they had no knowledge of this meeting or of those statements, and the other four alleged attendees (Hill, Smith, Carter, and Bocock) signed nearly identical affidavits.  All indications are that depositions of the latter four individuals would be "unreasonably cumulative or duplicative" of the Speare and Eldridge depositions.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

Moreover, this is not a situation in which a party first becomes aware of new witnesses with relevant information after having already used all or most of the available depositions.  Although the affidavits were only first presented to Kendrick at his deposition in July 2022,[8] at that time Kendrick had not yet used any of his depositions and was free to depose any of the four employee affiants from the IT department; nevertheless, he chose not to do so.  Even after Judge Ballou granted him one additional deposition, Kendrick still elected not to use it on any of those four employees.  As such, the court cannot conclude that permitting Kendrick to depose *all four* of these Bank employees is "necessary to have any chance at justice" (Dkt. No. 154 at 6).

---

[8] Although not essential to the court's ruling, at the hearing on these objections, Carter Bank represented that Kendrick had received these affidavits eight months earlier at a November 2021 discovery conference.

Kendrick also argues that this order "conflicts" with Judge Ballou's earlier order precluding Haskins' deposition; in his words, "[u]nder the magistrate's order, Plaintiffs cannot depose the Board chairman until they depose other witnesses. But the Plaintiffs cannot depose the witnesses because the magistrate has prohibited Plaintiffs from doing so. The 'alternative means' required to comply with the magistrate judge's order *is* the requested depositions." (Dkt. No. 154 at 6–7 (emphasis in original).) This argument reflects a misunderstanding of the court's orders. As his Rule 56(d) declaration makes clear, Kendrick sought four additional depositions to depose the employees he alleges were at the September 2017 meeting of IT personnel—not to depose other members of Carter Bank's board who were in meetings with Haskins. Judge Ballou's order limiting Kendrick to 11 depositions did not prevent him from using any of his then-remaining depositions[9] on one or more of the four IT employees or on one or more members of the Carter Bank board. Kendrick's decision to forego deposing those individuals is not a sound reason to sustain his objections.

The court sees no clear error in Judge Ballou's order granting Kendrick one additional deposition, as opposed to the five requested. Accordingly, his objections to this order will be overruled.

**D. Kendrick's Objections to Order on His Motion to Challenge Claw Back of His May 27, 2020 Termination Letter and to Depose the Author of the Letter (Dkt. No. 195).**

Kendrick's final objection is to Judge Ballou's order granting in part and denying in part his motion to "challenge [the] 'claw back' of [the] May 27, 2020 termination letter and to depose

---

[9] At the hearing, Carter Bank represented that, at the time the parties raised this discovery dispute to Judge Ballou, Kendrick had only used six of his depositions.

the author of the letter" (Dkt. No. 193).  Specifically, Kendrick objects to the portion of the order prohibiting him from deposing the person who authored the May 27 draft letter.[10]

In several respects, this objection is essentially a repackaged version of Kendrick's earlier disagreements with Judge Ballou's order precluding James Haskins' deposition, which the court has already overruled pursuant to the apex doctrine and the *Shelton* test.  The only additional gloss Kendrick adds to this objection is that deposing the person who wrote the May 27 draft letter might provide further evidence as to who decided to terminate him.  To the extent Kendrick sought to depose someone *other* than James Haskins who may have authored the May 27 draft letter, Judge Ballou's order correctly noted that Kendrick "did not seek relief to depose anyone associated with the bank" on that issue "before the end of discovery."  (*See* Dkt. No. 195 at 5 (citing *Infernal Tech., LLC v. Epic Games, Inc.*, 339 F.R.D. 226, 229 n.2 (E.D.N.C. 2021) (explaining that the plaintiff "ran the risk that the fact discovery period would expire without conducting all the discovery it wanted to" by waiting several weeks after a discovery dispute arose and discovery ended to bring its motion)).)

More centrally, though, to the extent Kendrick sought to depose Haskins about the May 27 draft letter under the belief that Haskins wrote it, Judge Ballou's order prohibiting Kendrick from doing so—once again—was not clearly erroneous.  For one, Kendrick's assertion that "whoever wrote the letter(s) also likely made the decision to terminate [him]" (Dkt. No. 182 at 7) is an entirely speculative proposition that the court cannot accept as a reason to order Haskins' deposition.  The Bank's "efforts to claw back the letter and invoke the attorney-client and work product privileges" (*id.* 9) seem to reflect its position only that one of its attorneys *drafted the letter*, not that the same attorney also made the ultimate employment decision.  Further, even

---

[10] Kendrick agrees with (and does not object to) Judge Ballou's ruling that Carter Bank could not claw back the May 27 letter.  Thus, the court will not review that ruling here.

13

assuming for the sake of argument that it was indeed Haskins who drafted the letter in his capacity as counsel for the Bank, Kendrick already conceded in his briefing on the motion for a protective order that any potential deposition of Haskins would necessarily be limited to actions taken in his capacity as Chairman (and former Vice-Chair) of the Board of Directors and former Chairman of the Governance Committee, "*not* as counsel for the Bank." (Dkt. No. 129 at 1 (emphasis added).) Questioning him about the May 27 draft letter would undoubtedly exceed that scope. Thus, the court cannot identify clear error in Judge Ballou's decision not to revisit his earlier ruling prohibiting the deposition under the apex doctrine and *Shelton* test. Accordingly, Kendrick's objections to this order will also be overruled.

### E. Kendrick's Rule 56(d) Declaration

The court has already addressed several of the issues Kendrick raised in his Rule 56(d) declaration by overruling his objections to Judge Ballou's orders on the same—namely, the depositions of James Haskins and the four IT employees who were allegedly in attendance at the September 2017 meeting. To the extent that the declaration overlaps with those objections, the court reaches the same conclusion and declines to re-open discovery for the reasons previously stated.

Finally, the other two matters addressed in Kendrick's declaration do not warrant the re-opening of discovery or any other court order. First, Kendrick asks that he be permitted to re-depose Speare and Paul Carney (the bank's CHRO) due to the Bank's production of a third draft termination letter, dated May 29, and related emails between Speare and Carney. Apart from the change in date, the newly produced draft is substantively identical to the May 27 draft letter that Kendrick questioned Speare and Carney about at their depositions. As such, the court sees no reason to permit re-deposition for questioning solely due to the production of this draft. Second,

Kendrick asks the court to order the Bank to produce a native document version of the termination letter. Notably, although Kendrick claims to have repeatedly asked the Bank for (and not received) the letter in native format, he never moved to compel the production of that document.[11] Regardless, at the hearing, counsel for the Bank represented that it already searched the Bank's records for any native document versions of the letter and was not able to locate one. Given that context, the court will not order the Bank to produce any additional documents.

### III.  CONCLUSION

For the reasons stated herein, it is HEREBY ORDERED that Kendrick's objections (Dkt. Nos. 153, 154, 195) are OVERRULED and then-Magistrate Judge Ballou's orders (Dkt. Nos. 148, 152, 193) are AFFIRMED.  Additionally, the court declines to re-open discovery or issue any further order in response to the Rule 56(d) declaration (Dkt. No. 198).  The clerk is directed to provide a copy of the memorandum opinion and order to all counsel of record.

Entered: May 18, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[11] Contrary to Kendrick's representation at the hearing, Judge Ballou's decision on the motion to challenge the Bank's claw-back of the May 27 draft letter did not include an order that the Bank produce any native documents.